The **BUSINESS DEVELOPMENT CORPORATION OF NORTH CAROLINA, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 13959.**

United States Court of Appeals, Fourth Circuit.

Argued May 4, 1970.

Decided June 24, 1970.

Richard W. Perkins, Atty., Dept. of Justice (Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson and Elmer J. Kelsey, Attys., Dept. of Justice, and Warren Coolidge, U. S. Atty., on brief), for appellant.

N. A. Townsend, Jr., Raleigh, N. C. (Thomas L. Norris, Jr., and Poyner,

Geraghty, Hartsfield & Townsend, Raleigh, N. C., on brief), for appellee.

Before BRYAN and BUTZNER, Circuit Judges, and JONES, District Judge.

ALBERT V. BRYAN, Circuit Judge:

Deficiencies were assessed in Federal income taxes for 1963 and 1964 against The Business Development Corporation of North Carolina, and it sues to recapture the payment of these amounts, as permitted by 26 U.S.C. § 7422(a). A jury had found a verdict favoring the taxpayer. The Government moved to set it aside and give a judgment non obstante dismissing the action. The District Court denied the request, but we think unadvisely.

Business Development since April 1, 1956, the year of its organization, has been in business in North Carolina as a lender of funds to enterprises needing financial aid for expansion or desiring moneys to commence business operations. To qualify as a borrower, the taxpayer required the applicant to prove an unsuccessful attempt to procure the loan from customary banking institutions. Business Development's own capital came principally from North Carolina sources, designated as "members" of the corporation, and also from the Small Business Administration of the United States.

Section 166(c) of the Internal Revenue Code of 1954 permits the establishment of a bad debt reserve, as follows:

" § *166. Bad debts*
*(a) General rule.—*

*(1) Wholly worthless debts.—* There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

\* \* \* \* \* \*

*(c) Reserve for bad debts.—*In lieu of any deduction under subsection (a), there shall be allowed (in the discretion of the Secretary or his delegate) a deduction for a reasonable addition to a reserve for bad debts."

Availing itself of 166(c), Business Development between 1957 and 1959 deducted from its taxable income $72,751.08,

creating a reserve. In 1960 the executive heads ordered additional deductions to raise the reserve to a sum equal to 5% of the taxpayer's outstanding loans. Like action in 1964 enlarged the account to 15%.

The Internal Revenue Commissioner's determination that the deductions through 1962 were sufficient to take care of estimated losses, and his refusal to permit the further deductions sought by the taxpayer under the increased percentages, amounting to $95,000.00 in 1963 and $120,000.00 in 1964, generated the reclamation of taxes now pressed. The Commissioner's defense is that the amount of any "deduction" for an "addition" to a reserve is left by the statute to his discretion, and that he has not in the circumstances of this case breached that trust.

The case went to the jury on special inquiries. The interrogatories with the answers were as follows:

"We, the jury, answer the following interrogatories as follows:

"Interrogatory Number 1:

"Was the Commissioner arbitrary in disallowing the claimed deduction of $95,000 for bad debt reserve of The Business Development Corporation of North Carolina for the year 1963?

"Answer:

"Yes.

"Interrogatory Number 2:

"What would have been a reasonable addition to the reserves of The Business Development Corporation of North Carolina for the year 1963?

"Answer:

"$95,000.

"Interrogatory Number 3:

"Was the Commissioner arbitrary in disallowing the claimed deduction of $120,000 for bad debt reserve of The Business Development Corporation of North Carolina for the year 1964?

"Answer:

"Yes.

"Interrogatory Number 4:

"What would have been a reasonable addition to the reserves of The Business Development Corporation of North Carolina for the year 1964?

"Answer:

"$120,000."

In Smoot Sand & Gravel Corp. v. Commissioner, 274 F.2d 495, 501 (4 Cir.), cert. denied 362 U.S. 976, 80 S.Ct. 1061, 4 L.Ed.2d 1011 (1960), we said:

"The purpose of the reserve is (1) to charge the loss against the *period in which it was actually incurred* as a result of the sale of goods to customers whose accounts subsequently prove to be uncollectible and (2) to show the estimated realizable value of the customers' accounts." (Accent added.)

Over the six years prior to 1963, Business Development's accumulated reserve came to $318,387.58 through average annual deductions of $53,064.60 for additions. In 1963, taxpayer suffered its first loss. It amounted to $28,037.-72. Although at that time the reserve was adequate to absorb losses of 10 times that amount, the taxpayer deducted—and added—for the year 1963 $95,000.00.

By the end of 1964 Business Development had sustained an additional loss of $23,015.66. At that point its reserve was $385,349.86, but nevertheless it claimed a tax deduction-addition for that year of $120,000.00. This sum carried the reserve to $482,334.20 by the end of 1964, despite the only losses experienced through that period had been $51,053.38. Perfectly evident, then, was that the reserve of $318,387.55 at the beginning of 1963 was generously adequate without the additions asserted for 1963 and 1964.

Against these figures, the taxpayer, denying the two attempts as excessive, offered only opinion evidence of what sums should have been added in 1963 and 1964. Business Development had the two-fold burden, under section 166(c), of demonstrating that the proposed increments were "reasonable" and the Commissioner's refusal an abuse of discretion. Conceding arguendo that opinion evidence was admissible, we find it wholly failed to establish that the Commissioner was unreasonable or violated his discretion. See Patterson v. Pizitz, Inc., 353 F.2d 267 (5 Cir. 1965), cert. denied 383 U.S. 910, 86 S.Ct. 895, 15 L.Ed.2d 666 (1966).

The Government's motion was the equivalent of a request for a directed verdict. A direction should be granted where there is "no substantial evidence to support" the verdict asked of the jury. Hawkins v. Sims, 137 F.2d 66, 67 (4 Cir. 1943). Furthermore, even though resolution of inferences must be left to the jury, nevertheless "it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Ford Motor Co. v. McDavid, 259 F.2d 261, 266 (4 Cir.), cert. denied 358 U.S. 908, 79 S.Ct. 234, 3 L.Ed.2d 229 (1958). That is this case.

In our view judgment should have been entered for the Government on its motion.

Reversed.