968 F.2d 1211
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lorene H. BOSTIC, Plaintiff-Appellant,
v.
RUSSELL COUNTY SCHOOL BOARD; Roger L. Taylor, Individually
and as principal of Lebanon Elementary School; G. B. Meade,
Individually and as Vice-Chairman of the Russell County
School Board; Larry A. Massie, Individually and as Division
Superintendent of Russell County Public Schools; Miles
Hillman, Individually and as a member of the Russell County
School Board; Charlie L. Collins, Individually and as
principal of Clinch River Elementary School; Linda G.
Tiller, Individually and as Chairman of the Russell County
School Board; Roger D. Sward, Individually and as a member
of the Russell County School Board; John H. Smith,
Individually and as a member of the Russell County School
Board; Sammy Lou Rasnake, Individually and as a member of
the Russell County School Board, Defendants-Appellees.
 No. 91-1644.
 United States Court of Appeals,
Fourth Circuit.
 rgued: February 3, 1992
Decided: July 24, 1992
 
 Argued: Hope Dene, Dene & Dene, Abingdon, Virginia, for Appellant.
 Scott Sanford Cairns, McGuire, Woods, Battle & Boothe, Richmond, Virginia, for Appellees.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 This is an appeal by Lorene H. Bostic from the district court's order granting a directed verdict to the Russell County School Board at the conclusion of the Plaintiff's evidence. The issues stem from the Board's decision to transfer Ms. Bostic to a comparable teaching position in another school. We agree with the decision of the district court as to all of Ms. Bostic's claims and therefore affirm.
 
 
 2
 Ms. Bostic was a teacher at Lebanon Elementary School in the Russell County School System. On May 20, 1988, the school was conducting the second of two local education association elections. Ms. Bundy, a third-grade teacher in charge of distributing the ballots, asked a student to deliver a ballot to Ms. Bostic. Ms. Bostic, upset that no envelope accompanied the ballot, entered Ms. Bundy's classroom, threw her ballot on Ms. Bundy's desk, and stated that she could not vote due to the envelope's absence. Ms. Bostic then engaged in a "discussion" with Ms. Bundy which left Ms. Bundy in tears in front of her class.
 
 
 3
 On July 12, 1988, School Superintendent Larry Massie recommended that the School Board transfer Ms. Bostic to another school. Ms. Bostic knew that her possible transfer was to be discussed at the Board meeting on that day, but she chose not to attend. The Board elected to transfer Ms. Bostic to Clinch River Elementary School. At that same meeting, the Board decided to transfer many other employees.
 
 
 4
 Working at Clinch River would require Ms. Bostic to travel via a winding mountainous road. Ms. Bostic refused to accept this position and she resigned as of August 1, 1990.
 
 
 5
 Seven months prior to the May 1988 incident in litigation here, Ms. Bostic had filed a grievance against the school's principal, Mr. Taylor. At some point prior to May, she also had been summoned to appear before a fact-finding panel concerning another teacher's conduct, but was not called to testify. Ms. Bostic asserted that she was threatened by her superiors subsequent to these occurrences.
 
 
 6
 Ms. Bostic's complaint against the Board alleged violations of the Age Discrimination Act, the First and Fourteenth Amendments, intentional infliction of emotional distress, and breach of contract. The crux of her complaint was that she had been constructively discharged because the Board knew she was too old to make the longer and more difficult drive to Clinch River. Before trial, Ms. Bostic voluntarily dismissed the age discrimination claim. At trial she maintained, for the first time, that she was constructively discharged because the Board knew her driving phobia would prevent her from negotiating the route to Clinch River.
 
 
 7
 A directed verdict is appropriate where there is no substantial evidence in dispute and, without weighing the credibility of the witnesses, the party with the burden of proof has failed to make a prima facie case, leaving but one reasonable conclusion as to the proper verdict. Fed. R. Civ. P. 50(a); see also Business Dev. Corp. v. United States, 428 F.2d 451, 453 (4th Cir. 1970), cert. denied, 400 U.S. 957 (1970).
 
 
 8
 Ms. Bostic's first argument on appeal is that the trial court erred in failing to find sufficient evidence to send the constructive discharge claim to the jury. Our court has held that a constructive discharge occurs when "an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985), cert. denied, 475 U.S. 1082 (1986). To prevail, Ms. Bostic must demonstrate that the Board intended to force her to quit her position. See id. The trial court correctly found there was insufficient evidence that the Board members knew of Bostic's phobia and intended her transfer as a means of forcing her to resign.[1]
 
 
 9
 Ms. Bostic contests the trial court's grant of a directed verdict to her due process claim. We have previously held that in order to establish a due process action, either substantive or procedural, a plaintiff must demonstrate that she has a protected liberty or property interest and that she has been deprived of such interest by state action. See Stone v. University of Maryland Medical System Corp., 855 F.2d 167, 172 (4th Cir. 1988). While Ms. Bostic had a property interest in her job, a transfer at the same salary does not comprise a constitutional violation absent proof of constructive discharge. See Huang v. University of North Carolina, 902 F.2d 1134, 1141, (4th Cir. 1990); Stone, 855 F.2d at 173.[2] Since Ms. Bostic did not successfully show that she was constructively discharged, she fails to demonstrate a due process violation.[3]
 
 
 10
 Ms. Bostic's third basis for appeal involves the trial court's decision to disallow her First Amendment claims from going before the jury. Ms. Bostic asserts that the Board's decision to transfer her was in retaliation for three instances of protected First Amendment speech. They were her appearance at a panel hearing regarding a coworker, her filing of a grievance against Mr. Taylor, and the classroom disturbance.
 
 
 11
 In order to prove a First Amendment infringement, Ms. Bostic must show: a) that the expressions alleged to have provoked the retaliatory action relate to matters of public concern; b) that the alleged retaliation deprived her of some valuable benefit; and c) that but for the protected expression, the employer would not have taken the alleged retaliation. Huang, 902 F.2d at 1140.
 
 
 12
 The first two instances of her alleged protected speech may be matters of public concern. However, there is no evidence that either of these incidents was the "but for" cause of Ms. Bostic's transfer. In fact, the transfer occurred a full year after Ms. Bostic filed her grievance.
 
 
 13
 As for the classroom incident, even if we should find that Ms. Bostic's concern over voting procedures constitutes a matter of public concern, we have held that First Amendment protection attaches only if the employee's interest in the speech outweighs the employer's interest in the "effective and efficient fulfillment of its responsibilities to the public." Huang, 902 F.2d at 1140 (quoting Connick v. Myers, 461 U.S. 138, 150 (1983)). Assuming the Board transferred Ms. Bostic because of this incident, it did not violate her First Amendment rights. The Board's interest in maintaining the dignity and efficiency of its classrooms prevails over Ms. Bostic's interest in promoting voting propriety in front of a third-grade class.
 
 
 14
 Ms. Bostic further contends that the trial court erred in directing a verdict for the defendants regarding Ms. Bostic's allegations of breach of contract. Ms. Bostic's contract specifically provided that the Board could transfer her at any time, and the Virginia courts have recognized that a school board can reassign a teacher provided that the teacher's salary remains the same. See Tazewell County School Bd. v. Gillenwater, 400 S.E.2d 199, 200 (Va. 1991). Ms. Bostic concedes that her transfer to Clinch River would not have involved a loss of pay or seniority. Therefore, the trial court acted correctly in refusing to submit this claim to a jury.
 
 
 15
 Ms. Bostic's final cause of action is her claim for intentional infliction of emotional distress. The trial court properly found that Ms. Bostic did not provide sufficient evidence to show that the Board's actions were so outrageous and severe as "to be regarded as atrocious, and utterly intolerable in a civilized community." Russo v. White, 400 S.E.2d 160, 162 (Va. 1991).
 
 Accordingly, the judgment is
 
 16
 AFFIRMED.
 
 
 
 [1]
 Because we agree with the trial court's finding as to the absence of intent, we elect not to consider whether Ms. Bostic also failed to meet the second part of the constructive discharge standard regarding the intolerability of working conditions
 
 
 [2]
 Additionally, Ms. Bostic had the opportunity to appear and be heard at the Board meeting when her transfer was discussed. She elected not to avail herself of this opportunity
 
 
 [3]
 The School Board argues that even if the transfer amounted to a constructive discharge and thus were grievable, Ms. Bostic failed to file a grievance within 15 working days of the discharge as required by the School Board and the Virginia Code. Since we agree with the trial court's finding that the Board did not constructively discharge Ms. Bostic, we do not need to consider whether her grievance was timely filed