Michael H. BOSTRON and Maurice R. DuBois, Plaintiffs,

v.

Kenneth S. APFEL, Defendant.

No. Civ.H–97–3154.

United States District Court, D. Maryland.

July 19, 2000.

E. David Hoskins, Law Offices of Peter G. Angelos, P.C., Baltimore, MD, for plaintiffs.

Allen F. Loucks, Assistant United States Attorney, Larry D. Adams, Assistant United States Attorney, Baltimore, MD, for defendant.

ALEXANDER HARVEY, II, Senior District Judge.

This Title VII case has had a lengthy and tortuous history, culminating in a recent trial in which the jury was unable to agree upon a final verdict as to all of the issues presented to it. A mistrial was declared by the Court, and a Partial Judgment has been entered.

As a result of numerous pretrial rulings made by the Court, only some of the many claims of plaintiff's Michael H. Bostron and Maurice R. DuBois were presented to the jury.[1] Seeking relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, these two

---

1. Claims of John Boyer, a third plaintiff in the case, were dismissed for the reasons stated in the Court's Memorandum and Order of December 2, 1999.

employees of the Social Security Administration (the "SSA") alleged in their complaint that the SSA had denied them numerous promotions because they were males. Suit has been brought against Kenneth S. Apfel, the Commissioner of Social Security.

Following extensive pretrial proceedings and the entry of a Pretrial Order and a Supplemental Pretrial Order, the case came on for trial before a jury. Plaintiff Bostron presented to the jury his claims that, because of his sex, he was discriminatorily denied twenty-six promotions during the period from 1988 through 1998, and plaintiff DuBois presented to the jury his claims that, because of his sex, he was discriminatorily denied three promotions in 1997 and 1998.[2] The trial lasted for some nine days. After deliberating for more than eleven hours over a period of two days, the jury returned a verdict in favor of defendant Apfel against plaintiff Bostron as to one of the promotional positions sought by him and in favor of defendant Apfel against plaintiff DuBois as to one of the promotional positions sought by him. However, the jury indicated that it was hopelessly deadlocked as to all of the other positions at issue.[3] On May 15, 2000, the Court declared a mistrial and discharged the jury.

Prior to the enactment of the Civil Rights Act of 1991, a plaintiff suing under Title VII was not entitled to a jury trial. *See Landgraf v. USI Film Products*, 511 U.S. 244, 247, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Five of the promotional positions sought by plaintiff Bostron were filled before the 1991 Act became effective. Counsel accordingly agreed that the Court should try and decide the issues raised by those five positions with the jury acting in an advisory capacity pursuant to Rule 39(c), F.R.Civ.P.

After declaring a mistrial as to the positions with respect to which the jury could not agree on a verdict, the Court rendered an oral opinion making findings of fact and conclusions of law. Applying the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) burden of proof scheme, the Court first determined that plaintiff Bostron had not as to the five positions at issue established a *prima facie* case of discrimination in violation of Title VII. The Court further found that, in any event, defendant had proved that there were legitimate, nondiscriminatory reasons for SSA's refusal to promote plaintiff Bostron to those positions. Finally, the Court, as the factfinder, determined that plaintiff Bostron had not proved that the reasons given by defendant were pretextual. The Court concluded that the statistical and other evidence presented by plaintiffs was not sufficient to show that defendant had intentionally discriminated against plaintiff Bostron insofar as each of these five positions was concerned. Accordingly, judgment was entered in favor of defendant against plaintiff Bostron as to those particular five positions.

Presently pending before the Court is a renewed motion for judgment as a matter of law filed by defendant pursuant to Rule 50(b), F.R.Civ.P. By way of this motion, defendant seeks the entry of judgment in his favor on all of the remaining unresolved claims asserted in this case by both plaintiff Bostron and plaintiff DuBois.[4] Memoranda in support of and in opposition to this motion have been filed by the parties and reviewed by the Court. A hearing on the pending motion has been held in open court. For the reasons stated here-

---

**2.** At the close of plaintiffs' case, the claim of plaintiff Bostron that he had also been subjected to racial discrimination was dismissed.

**3.** In a Note to the Court, the jury stated that it was "firmly" deadlocked and that more time spent in deliberations "won't get us anywhere."

**4.** As a result of the jury's partial verdict and the Court's oral opinion, plaintiff Bostron's unresolved claims relate to twenty promotional positions, and plaintiff DuBois' unresolved claims relate to two promotional positions.

in, defendant's renewed motion for judgment as a matter of law will be granted.

# I

## Background

The background facts of this litigation have been set forth in some detail in prior opinions of the Court.[5] For the purposes of the Court's rulings on the pending motion, those background facts need not be repeated here except insofar as any such additional facts may be relevant to the issues raised by the pending motion. In the complaint, plaintiff Bostron alleged that he had been discriminatorily denied promotions to 154 positions, and plaintiff DuBois alleged that he had been discriminatorily denied promotions to "numerous" positions. As a result of pretrial rulings of the Court, Bostron was permitted to present to the jury his claims that, because of his sex, he was discriminatorily denied twenty-six promotions during the period from 1988 through 1998, and DuBois was permitted to present to the jury his claims that, because of his sex, he was discriminatorily denied three promotions in 1997 and 1998. Discovery revealed that white males had been promoted to many of the other positions sought by plaintiffs, making it inappropriate for plaintiffs to seek recoveries under Title VII as to those claims.

At the trial, both sides called expert and other witnesses, and numerous exhibits were admitted in evidence. Plaintiffs, in seeking to prove that the SSA had intentionally discriminated against them because of their sex, relied almost entirely on agency-wide statistical evidence. Interpreting these statistics, Dr. Frederick Derrick, plaintiff's expert, opined that the SSA, in making the promotional decisions at issue, had discriminated against plaintiffs because they were males.

At the close of plaintiffs' case, defendant orally moved for judgment as a matter of law pursuant to Rule 50(a). That motion was denied. At the close of all the evidence, defendant once again moved under Rule 50(a) for judgment as a matter of law, and once again this motion was denied by the Court. The case was then presented to the jury under lengthy instructions from the Court. When the jury could not agree on a verdict as to all of the issues in the case, a mistrial was declared.

# II

## Applicable Legal Principles

It is well established that Rule 50(b) permits the filing by a party of a renewed motion for judgment as a matter of law in the event that a mistrial has been declared. *DeMaine v. Bank One Akron, N.A.,* 904 F.2d 219, 220–221 (4th Cir.1990). Rule 50(b) specifically provides that if no verdict was returned by a jury, the Court may, in disposing of a renewed motion, "direct the entry of judgment as a matter of law or may order a new trial."

 In ruling on a motion for judgment as a matter of law, the trial court should consider the record as a whole viewing the evidence presented in the light most favorable to the party against whom the motion is made. *Marder v. G.D. Searle & Co.,* 630 F.Supp. 1087, 1088 (D.Md.1986), *aff'd without op. sub nom., Wheelahan v. G.D. Searle & Co.,* 814 F.2d 655 (4th Cir.1987). When the evidence is viewed in such a light, judgment should be entered notwithstanding the jury's failure to reach a verdict if insufficient evidence was presented to support a verdict for the nonmoving party. *Id.* at 1089. A district court should enter judgment as a matter of law in favor of a defendant if the plaintiff has failed to produce substantial evidence in support of its claim. *DeMaine,* 904

---

**5.** *See Bostron v. Apfel,* 182 F.R.D. 188 (D.Md. 1998); Memorandum and Order of August 18, 1999 ruling on the parties' motions for summary judgment and Memorandum and

Order of March 17, 2000 granting in part and denying in part defendant's motion for partial summary judgment.

F.2d at 220; *Business Dev. Corp. v. United States,* 428 F.2d 451, 453 (4th Cir.) *cert. denied,* 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970). Speculative or conjectural inferences are not sufficient to support a verdict in favor of a party opposing a motion for judgment as a matter of law. *Business Dev. Corp.,* 428 F.2d at 453. More than a scintilla of evidence is required. *Mann v. Bowman Transp., Inc.,* 300 F.2d 505, 510 (4th Cir.1962). An issue may be removed from the jury if evidence provides a mere "possibility" yet not a "probability" of proof. *Mayberry v. Dees,* 663 F.2d 502, 510 (4th Cir.1981), *cert. denied,* 459 U.S. 830, 103 S.Ct. 69, 74 L.Ed.2d 69 (1982).

Each plaintiff in this case must first establish a *prima facie* case of discriminatory failure to promote as to each position sought by him. Each plaintiff must prove (1) that he is a member of a protected group; (2) that he applied for the position in question; (3) that he was qualified for the position; and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817; *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir.1991).

After each plaintiff has made a *prima facie* showing, the burden shifts to the defendant to produce evidence "that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This burden is one of production, not of persuasion, and it involves no credibility assessment. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The "[u]ltimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

Once the defendant has articulated a legitimate, nondiscriminatory explanation for its decision, each plaintiff is then given "the opportunity to prove by a preponderance of the evidence that the legitimate reasons were not its true reasons, but were a pretext for discrimination." *Id.* A plaintiff may attempt to establish that he was a victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination drops out once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case "and all inferences drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Id.* at 255, n. 10, 101 S.Ct. 1089. Thus, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000).

The Fourth Circuit has indicated that "pattern and practice evidence has little, if any, relevance in an individual disparate treatment action." *McClosky v. Prince George's County, Md.,* 103 F.3d 118 (Table), 1996 WL 726854, at *1 (4th Cir. Dec.18, 1996). In *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742 (4th Cir.1998), *vacated on other grounds,* —— U.S. ——, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999), the Fourth Circuit discussed the different roles played by statistical evidence presented in a class action disparate treatment case when compared to that presented in an individual disparate treatment case, stating:

> In a class action pattern or practice case, the plaintiffs first litigate common questions of fact, i.e., whether the employer utilized a pattern or practice which discriminated against the class ... When the class plaintiffs prove the

existence of a discriminatory practice, then that finding benefits them in the adjudication of individual claims by creating a presumption that the individual class members were victims of the discriminatory practice ... On the other hand, an individual plaintiff, in a non-class action alleging employment discrimination is not litigating common questions of fact, but the discrete question of whether the employer discriminated against the plaintiff in a specific instance ...

*Id.* at 761. (Citations omitted).

In several cases, judges of this Court have concluded that statistical evidence is entitled to little weight in a disparate treatment case. *See Davis v. Litton Bionetics, Inc.,* 444 F.Supp. 638, 646 (D.Md. 1978) (holding that statistical evidence of the racial composition of employer's supervisory personnel was entitled to "little weight" where the "critical issues relate to individualized decisions concerning a particular employee"); *Opara v. Modern Mfg. Co.,* 434 F.Supp. 1040, 1044–45 (D.Md. 1977) (holding that where the case is an individual suit for discrimination, but not a class action, statistics do not play a vital role in determination of the issues before the court). Courts in other circuits have also addressed the role played by statistical evidence in individual disparate treatment actions and the weight to be accorded such evidence in suits of this sort. In *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1252 (7th Cir.1990), the Seventh Circuit noted that in the context of an individual disparate claim action, statistical evidence "can only be collateral to evidence of specific discrimination against the actual plaintiff." In *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir.1984), the Eleventh Circuit held:

[S]tatistics alone cannot make out a case of individual disparate treatment ... [A]lthough a case of classwide discrimination might be made out by "compelling independent [statistical evidence] of a pattern or practice of discrimination,"

in an individual case "each plaintiff bears the burden of proving that each employment decision that adversely affected him or her was the product of a discriminatory motive." (citing *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir.1983)).

*Id.* at 1131–32.

In *Warren v. Halstead Industries, Inc.,* 613 F.Supp. 499 (D.C.N.C.1985), the Court had occasion to consider the probative value of statistical evidence in an individual disparate treatment case where the plaintiff was attempting to prove that his employer's legitimate, nondiscriminatory reasons for the adverse actions at issue were pretextual. The Court concluded that "statistics are not sufficient to prove pretext in individual disparate treatment cases." *Id.* at 506, n. 2 (citations omitted).

Courts in other circuits have made similar determinations. In *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836 (1st Cir. 1993), the First Circuit ruled that:

[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for [an adverse employment action] ... This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when [taking an adverse employment action] ... "Without an indication of a connection between the statistics," the practices of an employer, and the employee's case, statistics alone are likely to be inadequate to show that the employer's decision [to take the adverse action against] the employee was impermissibly based on [illegitimate criterion]. (Citations omitted).

*Id.* at 848; *see also Walther v. Lone Star Gas Co.,* 977 F.2d 161, 162 (5th Cir.1992); *Hudson v. IBM Corp.,* 620 F.2d 351, 355 (2d Cir.1980); *King v. Yellow Freight Sys., Inc.,* 523 F.2d 879, 882 (8th Cir.1975).

## III

### Discussion

In support of their Rule 50(b) motion, defendant contends that the evidence presented at the trial was insufficient as a matter of law to satisfy the requirements of *McDonnell Douglas, Burdine* and *St. Mary's Honor Center.* As the Court instructed the jury, defendant did meet his burden of articulating legitimate, nondiscriminatory reasons for the failure of selecting officials to promote plaintiffs to each of the positions sought by them. Defendant now argues that no rational jury could find on the evidence presented at the trial that each plaintiff met his burden of proving that the legitimate, nondiscriminatory reason proffered by the defendant for not promoting each plaintiff to each particular position was false and a pretext for unlawful discrimination. As the Supreme Court held in *St. Mary's Honor Center,* a plaintiff has the ultimate burden at the final stage of the *McDonnell Douglas* proof scheme to prove intentional discrimination. 509 U.S. at 511, 113 S.Ct. 2742. According to defendant, the statistical evidence presented, as interpreted by plaintiff's expert, cannot be considered as competent evidence of pretext and intentional discrimination in a case like this one involving individualized disparate treatment of each of the plaintiffs.

In opposing defendant's motion, plaintiffs argue that in addition to the statistical evidence presented, the record contains other evidence of pretext which would permit the jury to find in favor of each plaintiff as to the promotional positions at issue. In particular, plaintiffs note that the SSA, like other federal agencies, prepares on an annual basis an Affirmative Employment Plan ("AEP") designed to address various forms of discrimination in employment. According to plaintiffs, the existence of AEPs at the SSA and the pressure placed on selecting officials and high level managers to comply with them constituted sufficient circumstantial evidence of pretext for this issue to be decided by the jury in favor of the plaintiffs.

■ Following its careful review of all the evidence produced at the trial in this case, the Court has concluded that plaintiffs have failed to satisfy their burden of proving that they were subjected to intentional discrimination when they were not promoted to the various positions sought by them.[6] The Court is satisfied that the statistical evidence of record, as interpreted by plaintiffs' expert, is not competent evidence of wrongful disparate treatment of each plaintiff when he was not selected for the positions in question. Moreover, the inferences derived by plaintiffs from other facts of record are speculative and conjectural and do not constitute substantial evidence which would support a verdict in favor of either plaintiff Bostron or plaintiff DuBois as to any of the promotional positions sought by them.

■ What must be determined here is whether there exists sufficient evidence in the record showing that defendant's explanations for the adverse actions were false, that they constituted a pretext for discrimination and that the trier of fact might therefore reasonably conclude that defendant unlawfully discriminated against the plaintiffs. *Reeves,* —— U.S. ——, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105. Decisions of this Court and of the Fourth Circuit indicate that statistical evidence has little, if any, relevance in an individual disparate treatment action. *McClosky,* 1996 WL 726854, at *1; *Opara,* 434 F.Supp. at 1044–45; *Carmichael,* 738 F.2d at 1131–32. Statistics alone are not sufficient to prove pretext in individual disparate treatment cases. *Warren,* 613 F.Supp. at 506, n. 2. As the First Circuit noted in *LeBlanc,* 6 F.3d at 848, an employer's overall employment statistics will

---

6. In addition to Bostron and DuBois, only two other witnesses were called by plaintiffs to testify at the trial.

have little direct bearing on the specific intention of the employer when making a particular adverse employment decision. *See also Walther*, 977 F.2d at 162; *Hudson*, 620 F.2d at 355; *King*, 523 F.2d at 882.

Plaintiffs argue that there is other circumstantial evidence in this case which would permit a jury to find that the SSA's justifications for the adverse employment actions were false and to therefore conclude that the SSA intentionally discriminated against each of the plaintiffs. Plaintiffs rely on various facts of record which they contend would inferentially prove pretext. In addition to the statistical evidence in the record, plaintiffs argue that pretext is demonstrated by (1) the utilization of "vacancy profiles" by selecting officials at the SSA when filling promotional positions; (2) the existence of AEPs at the SSA; (3) the inability of selecting officials to offer reasonable comparisons between the qualifications of the person selected for each position at issue and the plaintiff who sought the promotion; (4) the fact that selecting officials had to have their selections approved by higher level management at the SSA who were purportedly "governed" by the AEPs; (5) the failure of selecting officials to strictly adhere to SSA policy and procedure for filling promotional vacancies within the agency; and (6) the over-zealousness of selecting officials in implementing the AEPs. On the record here, this Court concludes that this so-called circumstantial evidence and the unwarranted inferences derived therefrom by plaintiffs, whether considered separately or in the aggregate, are not sufficient to support a verdict in favor of either plaintiff as to any one of the promotional positions still at issue.

The inherent deficiency in plaintiffs' reliance on this evidence is the complete absence of any indication that each selecting official who made each adverse employment decision was motivated by an intention to unlawfully discriminate against a plaintiff. That is to say, no evidence exists that any one of the many SSA officials who made each adverse decision specifically intended to discriminate against plaintiff Bostron or plaintiff DuBois because they were males. Fifteen different SSA selecting officials holding positions in different offices and departments of the SSA testified at the trial.[7] Some of these individuals were males and others were females. Each of these witnesses detailed the reasons why a female applicant rather than Bostron or DuBois was selected for the 29 positions at issue in this case. The evidence presented by the plaintiffs at the trial did not include any statements by any one of these SSA officials or any documents authored by them which displayed a discriminatory animus against males.

■■■ There is no merit to plaintiffs' argument that the utilization by SSA representatives of vacancy profiles and the existence of AEPs constituted proof of pretext. Evidence does not exist that any one of the particular selecting officials relied on the vacancy profiles. Evidence of the existence of an affirmative action plan is generally relevant as proof of intentional discrimination "only if [the employer's adverse] actions were taken pursuant to the plan." *Brown v. McLean*, 159 F.3d 898, 904 (4th Cir.1998) (*citing Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 976 (9th Cir.1994); *McQuillen v. Wisconsin Educ. Ass'n Council*, 830 F.2d 659, 666 (7th Cir.1987)); *see also Whalen v. Rubin*, 91 F.3d 1041, 1045 (7th Cir. 1996); *Gadson v. Concord Hosp.*, 966 F.2d 32, 35 (1st Cir.1992). There is no evidence whatsoever that any one of the selecting officials relied on the AEPs in making the promotional decisions challenged by a plaintiff. Several selecting officials testified that they did not even know of the existence of the AEPs and that they never

---

7. The testimony of two of these individuals, who were unavailable at the time of the trial, was presented by way of their depositions.

discussed equal employment goals with senior managers. Evidence of the fact that, as required by federal law, the SSA like other federal agencies prepares an AEP on an annual basis is too attenuated to constitute substantial evidence that plaintiffs were subjected to intentional discrimination.

It is hardly of consequence that so many females were promoted to positions sought by the plaintiffs. As a result of the Court's pretrial rulings, the jury was permitted to consider only those positions as to which a female received the promotions. However, there were many other SSA promotional positions sought by Bostron and DuBois over the years as to which males received the promotions. Since no sex discrimination could have resulted from those adverse employment actions, evidence pertaining to those positions was not presented by plaintiffs to the jury. Plaintiff Bostron has displayed a penchant for indiscriminately applying for promotions and other government jobs, within or without the SSA, whenever there were openings. In the complaint, he alleged that he had applied for SSA promotions on 154 occasions between January of 1988 and October of 1993, including 41 separate job openings in 1992 alone. In a Declaration filed in this case, Bostron stated that during the last 18 years, he has applied for over 300 jobs, including those posted by the Social Security Administration and by other government agencies. That so many different male and female selecting officials refused to promote him or hire him hardly supports his contention that he was highly qualified for each position he sought.

■ Plaintiffs also contend that the inability of the selecting officials to make reasonable comparisons of the qualifications of the persons selected to fill the positions at issue and of the plaintiffs constitutes evidence of pretext. But such inability is of little consequence because it is the plaintiffs and not the defendant who bear at all times the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against them. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Defendant has produced unrefuted evidence that someone other than plaintiff Bostron or plaintiff DuBois was preferred for each position at issue. Each plaintiff accordingly then had the burden of demonstrating that he was more qualified than the person actually selected for the promotion. The record here is devoid of any competent evidence which would satisfy that burden.

■ In a promotion case like this one, each plaintiff carries the burden to establish that he was the better qualified candidate for the promotion sought. *Gairola v. Com. of Va. Dept. of General Services,* 753 F.2d 1281, 1287 (4th Cir.1985). Plaintiffs rely on the fact that Bostron and also DuBois have each asserted that he is more qualified for each position at issue than was the person actually selected to fill the position. However, where a defendant produces proof that its reason for not promoting a Title VII plaintiff was that it selected the best qualified candidate for the position, a bare assertion by the plaintiff that he was more qualified for the position than the person actually selected is insufficient to demonstrate pretext. *Vaughan v. Metrahealth Cos., Inc.,* 145 F.3d 197, 202 (4th Cir.1998) The fact that each plaintiff was on the so-called Best Qualified List for each position merely establishes that he, like the many other applicants, was qualified for consideration for the promotion. Such evidence does not prove that either Bostron or DuBois was more qualified than the person actually selected. In this particular case, neither Bostron nor DuBois was in a position to compare his qualifications with those of the person selected for each promotional position at issue because the person selected and her attributes were not even known by either one of them. Standing alone, self-serving claims of superiority in a Title VII case do not suffice. *Id.*

■ That selecting officials were required to have their selections approved by higher level SSA managers who may have had knowledge of the AEPs, provides little, if any, weight to plaintiffs' claim of pretext. General evidence of this sort is relevant only if the defendant's adverse employment actions "were taken pursuant to the Plan." *Brown,* 159 F.3d at 904. It is purely conjectural for plaintiffs to suggest that the higher level managers of the SSA who approved decisions of the selecting officials were "governed" by provisions of the AEPs. Nor is there proof that such higher level officials zealously undertook to promote affirmative action plans of the SSA. Even if evidence of this sort did exist, the claimed over-zealousness of higher level SSA managers in implementing the AEPs is not proof of pretext unless it can be shown that such over-zealousness was causally related to the particular adverse employment action taken by a selecting official. *Id.* Plaintiffs have made no such showing.

■ Finally, plaintiffs have argued that selecting officials failed to strictly adhere to SSA policies and procedures concerning the filling of promotional vacancies. Such evidence is not proof of pretext because such a failure, in the absence of evidence indicative of discriminatory animus on the part of the selecting official, "would work to the detriment of all applicants for the job, [male and female] alike." *Blue,* 914 F.2d at 541; *Kennedy,* 598 F.2d at 341. Accordingly, plaintiffs' argument that selecting officials improperly preselected individuals for the position contrary to SSA policy is entitled to no weight in the absence of proof of discriminatory animus on the part of the selecting officials.

Plaintiffs' reliance on the very recent Supreme Court decision in *Reeves* is misplaced. There was no discussion in *Reeves* of the weight to be accorded statistical evidence in an individual disparate treatment action like this one in which the plaintiff has relied on such evidence as proof of pretext. In the *Reeves* case, the Supreme Court concluded that the plaintiff had at the trial made a substantial showing that his employer's explanation for plaintiff's discharge was false. —— U.S. ——, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105. Plaintiff's employer had contended that it had fired the plaintiff due to his failure to maintain adequate attendance records. At the trial, plaintiff offered detailed evidence that he had properly maintained attendance records. In *Reeves,* the Supreme Court held that proof that the defendant's explanation was false constituted one form of circumstantial evidence that is probative of intentional discrimination. *Id.* at 2108, (citing *St. Mary's Honor Center,* 509 U.S. at 511, 113 S.Ct. 2742). No such direct proof of the falsity of the selecting officials' explanations for their actions is present in this case. In the absence of such proof or of other evidence of the selecting officials' discriminatory animus, a jury as the trier of fact may not be permitted "to infer the ultimate fact of intentional discrimination." *Id.*

In sum, plaintiffs in this case have attempted to satisfy their burden of proving pretext by coupling together unwarranted inferences derived from bits and pieces of evidence presented at the trial. None of this evidence has been shown to be directly connected to the explanations given by SSA officials for the adverse employment actions taken. Nor may plaintiffs rely on statistical evidence in this disparate treatment case. In the absence of proof of pretext, plaintiffs have failed to meet their ultimate burden of proving intentional discrimination.

## IV

### *Conclusion*

For all the reasons set forth herein, this Court will grant defendant's renewed motion for judgment as a matter of law. An appropriate Order will be entered by the Court.