**Mary I. RALEY**

v.

**BOARD OF ST. MARY'S COUNTY COMMISSIONERS.**

**Civ. A. No. WN–89–1637.**

United States District Court, D. Maryland.

Sept. 7, 1990.

**1274**

Michael C. Warlow, Paul F. Evelius, and Wright, Constable & Skeen, Baltimore, Md., for plaintiff.

George W. Johnston, Darrell R. VanDeusen, and Venable, Baetjer & Howard, Baltimore, Md., for defendant.

## MEMORANDUM

NICKERSON, District Judge.

Pending before this Court is Defendant's Motion for Summary Judgment (Paper # 34) filed May 15, 1990, which Plaintiff has opposed. Having reviewed the pleadings, memoranda, and exhibits, this Court finds that a hearing is not necessary. Local Rule 105.6. For the reasons stated below, Defendant's Motion for Summary Judgment should be granted.

## BACKGROUND

Plaintiff Mary I. Raley ("Raley") alleges various sex discrimination claims under the Equal Employment Opportunities subchapter of Title VII of the 1964 Civil Rights Act, codified at 42 U.S.C. §§ 2000e–1 through 2000e–17 (1981). Defendant Board of St. Mary's County Commissioners ("the Board") employed Raley as Assistant Zoning Administrator ("AZA") in the Office of Planning and Zoning ("OPZ") from May 5, 1980, through November 23, 1981. During that time the Board consisted of five elected County Commissioners who oversaw the operations of the OPZ. The OPZ was headed by Frank Gerred, Raley's immediate supervisor. The AZA position was created in 1980 because the Zoning Administrator resigned and no qualified applicants emerged. As a result, the position of Zoning Administrator was re-advertised as Assistant Zoning Administrator and Raley was one of eight applicants for this newly created position. Gerred selected her for the job over two more qualified males expecting her to grow into the position.

As a new County employee Raley was subject to a six month probationary period. She did a variety of tasks in her new position including researching and writing reports to be submitted to the Planning Commission. Raley claims that during this first six month period Gerred touched her on various occasions and engaged in flirtatious conduct with her and other females in the office. Raley communicated to Gerred her disapproval of these touchings. At the close of her probationary period Raley received a 91 rating on a 0–100 scale.

Both parties agree that the second six months of Raley's employment did not proceed as productively as the probationary period, although they differ as to the reasons. The Board claims that Raley had difficulty managing the office and objected to doing tasks which she deemed clerical. Her supervisor, Gerred, was not pleased

with the quality of her work. In the early months of 1981 Raley was subjected to various offensive touchings and other sexual innuendos. On one instance when Raley was seated at a drafting table, Gerred uninvitedly placed his hand on her thigh underneath her dress. During this time Raley also observed other females experience hugs, kisses, and other touchings by Gerred, which he admits doing.

During the final six months of Raley's employment, three distinct incidents occurred between Gerred and Raley. The period began with Gerred's "unsatisfactory" performance evaluation given on May 25, 1981 whereupon Raley instituted grievance procedures. The hearing scheduled for August 19, 1981, never occurred because on August 3, 1981, Gerred changed Raley's evaluation to "satisfactory," making the hearing moot. Gerred instituted a second disciplinary action due to Raley's improper granting of certain permits and placed her on five day administrative leave beginning July 23, 1981. After Raley responded, Gerred downgraded the leave to a reprimand containing four charges. At a hearing on Plaintiff's formal grievance of the reprimand, the Grievance Review Board unanimously found in favor of Raley. A third disciplinary action occurred on August 18, 1981, when Gerred issued a "letter of caution" to Raley for failure to follow certain procedures in signing site plans. She admits having made a mistake but viewed Gerred's action as harassment.

Raley filed an internal sex discrimination appeal on August 31, 1981, because Gerred had given her, but not another male employee, a letter of caution for what she believed was a similar violation. Billye McGarhan, a ranking female employee in the County government, was immediately assigned as the appeals officer by County Administrator Edward Cox. During September and October Raley discussed the case including the harassment complaints with McGarhan, but Raley never amended her appeal to include sexual harassment even though she knew she had that right. On October 6, 1981, Raley and McGarhan met with the County Commissioners in ex-

ecutive session to discuss these concerns. The Commissioners met separately with Gerred. As a result of her investigation, which Raley maintains was very lax, McGarhan found no evidence of discrimination but did recognize the great amount of hostility between Raley and Gerred. This caused McGarhan to explore a lateral transfer for Raley within the County government. Also, Raley's two requests for educational leave were granted during the investigation.

The lateral transfer possibility was communicated to Raley on November 2, 1981, via a memorandum which stated: "As a part of the intervention process, it has been agreed that a position negotiating a lateral move of position might be advantageous at this time. We will discuss this [on] November 10, 1981 at 10:00 room 16." On November 3rd Raley asked Gerred to respond to her leave request. Gerred responded with: "Approved with the requirement that the Nov. 10 appointment at 10 AM be kept." It was at this point that Raley claims she could no longer tolerate working in the OPZ. Raley submitted to Gerred a letter dated November 10, 1981, stating that she was resigning effective November 24. County Administrator Cox was not surprised that she left the County in light of all that had taken place.

Raley filed her complaint alleging sexual harassment and constructive termination with the Maryland Human Relations Commission ("MHRC") on March 30, 1982, and cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Def. Ex. # 18. On December 18, 1984, Raley amended her MHRC complaint to include retaliation. Def. Ex. # 19. Over the six (6) years since the filing of the MHRC and EEOC complaints, Raley has periodically contacted the investigator assigned to her complaint to check on the progress of the probable cause findings by the Commissions.

Prior to the decisions of the Commissions, Gerred resigned from his position as director of the OPZ. Raley applied for that position by sending a letter and resume on May 22, 1988. The qualifications required

"major course work in planning" and "four (4) years of professional experience in the field of planning," or an "equivalent combination of acceptable education and experience which has provided the [requisite] knowledge, skills, and abilities ...". The Board reviewed Raley's resume but did not consider her for the job because she lacked the necessary qualifications. Because she was not considered, Raley filed a retaliation claim with the MHRC and EEOC on August 8, 1988.

The first candidate offered the position did not accept. The Board re-announced the position with the same requirements. Raley reapplied in November of 1988 for the second selection process. This time her resume was presented to the selection panel for consideration. The panel did not find her to be among the qualified candidates and did not consider her application further. Candidate Jon Grimm was hired.

The MHRC filed its written decision on September 1, 1988, finding "no probable cause exists to believe that unlawful discrimination occurred." Def. Ex. # 20. The EEOC's written decision on March 22, 1989, also found that the "evidence obtained during the investigation does not establish violations of the statutes." Def. Ex. # 21.

Plaintiff Raley filed this present suit against Defendant Board of County Commissioners on June 1, 1989, pursuant to 42 U.S.C. §§ 2000e–2(a)[1] and 2000e–3(a)[2] (1981). In her complaint Raley alleges (1) sexual discrimination, (2) constructive discharge, (3) sexual harassment, (4) retaliation during her employment, and (5) retaliation in her 1988 application for employment. Raley requests back pay and other equitable relief pursuant to 42 U.S.C. § 2000e–5(g).

## SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56. Regarding materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Regarding genuineness, a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The party seeking summary judgment bears the initial burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden does not require the moving party to produce *evidence* showing the absence of a genuine issue of material fact, but only to point out the absence. *Id.* (emphasis added). In responding, the adverse (nonmoving) party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e);

---

**1.** § 2000e–2. Unlawful Employment Practices.

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex,* or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual or employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, *sex,* or national origin.

**2.** § 2000e–3 Other Unlawful Employment Practices.

(a) It shall be an unlawful employment practice for an employer to discriminate against any or his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

*Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has stated that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's case will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *Id.* at 252, 106 S.Ct. at 2512. The evidence of the non-moving party is to be believed and all justifiable inferences are to be drawn in the non-moving party's favor. *Id.* (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970)).

DISCUSSION

A. *Laches*

Plaintiff Raley did not file the present suit until seven and one-half years after she left her job in November of 1981. Defendant Board argues that the suit is barred by the equitable doctrine of laches. Raley contends that the doctrine of laches does not apply because she had a right to wait for the decisions by the Commissions and because the Board has suffered no prejudice as a result of the delay.

This suit is brought under the authority of 42 U.S.C. § 2000e–5, the enforcement provision for the Title VII. Raley has complied with the statutory requirements by timely filing her MHRC and EEOC actions within 180 days of her resignation. 42 U.S.C. § 2000e–5(e) (1981); Md.Code Ann. art. 49B, § 9 (1986 Repl.Vol.). If the EEOC dismisses the complaint or has not filed a civil action within 180 days of the complainant's filing, then the complainant *may* obtain a "right to sue" letter from the Commission and file his or her own action. 42 U.S.C. § 2000e–5(f)(1) (emphasis added). Raley did not request one in this case. The doctrine of laches may be invoked as a defense to a Title VII suit.

*Albemarle Paper Co. v. Moody,* 422 U.S. 405, 424–425, 95 S.Ct. 2362, 2374–75, 45 L.Ed.2d 280 (1975); *Pande v. Johns Hopkins Univ.,* 598 F.Supp. 1084, 1086 (D.Md. 1984). To prove the defense of laches the defendant must show (1) unreasonable delay in bringing the action, and (2) resulting prejudice to the employer. *Pande,* 598 F.Supp. at 1087. As an equitable doctrine the application of laches lies within the discretion of the courts. For reasons stated below, this Court finds that the Board has not met its burden of proving "unreasonable delay." Thus, this suit is not barred by laches and the Board's arguments regarding prejudice need not be addressed.

The courts of appeal disagree on whether laches applies when a claimant chooses to await the termination of EEOC proceedings. See generally *Cleveland Newspaper Guild v. Plain Dealer Pub. Co.,* 839 F.2d 1147 (6th Cir.1988) (*en banc*). The cases reviewed by this Court involved delays of six years to as many as fourteen years by plaintiffs having varying degrees of knowledge and diligence. The Plaintiff here, an educated woman, knowledgeable about her rights under 42 U.S.C. § 2000e–5, cannot excuse the delay on the basis of ignorance. She did, however, make numerous calls to the MHRC and EEOC to check on the status of her claims. In *Pande,* on which the Board relies, the plaintiff was a professional, who absented himself from the country for seven years, and made no attempts pursue his claim. Raley's delay does not rise to this level of inattention and cannot be declared unreasonable. Under the totality of the circumstances this Court declines, although reluctantly, to grant summary judgment against Raley on the basis of laches.

B. *Sexual Discrimination*

Raley claims that the Board discriminated against her on the basis of sex in that she received different treatment than similarly situated males in the OPZ. The United States Supreme Court has set forth a three step procedure for discrimination/disparate treatment cases. As a

**1278**

first essential step, the plaintiff must establish a four element prima facie case: (1) that the employee is a member of a protected class; (2) that the employee was qualified for the job and the job performance was satisfactory; (3) that in spite of qualifications and performance, the employee suffered adverse employment action; and (4) that the employee was treated differently than similarly situated employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989). Second, if the prima facie case is established, an inference of discrimination arises that may be rebutted by an employer on a showing of legitimate, non-discriminatory reasons for the dismissal. *Id.* Third, if the employer makes this showing, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reasons for the dismissal are pretextual. *McDonnell*, 411 U.S. at 804, 93 S.Ct. at 1825; *Williams*, 871 F.2d at 456.

Here, Raley fulfills the first criteria by being female. The second element, satisfactory performance, can be established by viewing the alleged facts in the light most favorable to Plaintiff. It is in the third element, adverse employment action, that Raley's prima facie case falls short. The Fourth Circuit in discussing a related Title VII section has stated:

> Disparate treatment theory as it has emerged in application of this and comparable provisions of Title VII, most notably § 703(a)(1), 42 U.S.C. § 2000e–2(a)(1), has consistently focused on the question whether there has been discrimination in what could be characterized as *ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.*
>
> \*   \*   \*   \*   \*   \*
>
> [I]t is obvious to us that there are many *interlocutory or mediate decisions having no immediate effect upon employment conditions* which were not intended to fall within the direct proscriptions of § 717 and comparable provisions of Title VII.

*Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981) (emphasis added).

As a matter of law the treatment Raley received from Gerred does not rise to the level of being "ultimate employment decisions." The touchings and verbal comments were not employment decisions. Raley's employment evaluation was changed from unsatisfactory to satisfactory, the reprimand was rescinded, and the letter of caution never went on her record. Raley, relying on *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982), asserts that damaged psychological well-being can also be adverse employment action in a sex discrimination case. This contention is misplaced here because *Henson* discussed psychological well-being in a sexual harassment context. The standard in a sexual harassment case is "offensive and hostile work environment" where psychological well-being may be included, rather than the higher sex discrimination standard of "adverse employment action." Plaintiff's allegations do not meet the criteria for establishing sex discrimination. Summary judgment on the sex discrimination will therefore be granted.

## C. *Constructive Discharge*

Raley argues that she was constructively discharged from her job because (1) the work environment was made intolerable for her on the basis of her sex and (2) she filed a sex discrimination appeal. To establish constructive discharge under Title VII(1) the employee must [have been deliberately] subjected to employment practices which are discriminatory (on the basis of sex in the present case) and (2) which make the working conditions intolerable, thus forcing the employee to quit. *EEOC v. IBM Corp.*, 583 F.Supp. 875, 905 (D.Md. 1984); See also *Bristow v. Daily Press, Inc.*, 770 F.2d 1251 (4th Cir.1985).

"Deliberateness" exists only if actions complained of "were intended by the employer as an effort to force the employee to quit." *Bristow*, 770 F.2d at 1255 (quoting *EEOC v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 672 (4th Cir. 1983). The intent required is a specific

intent to force an employee to leave, *J.P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494 (4th Cir.1972), which can be inferred from a failure to act in the face of known intolerable conditions. *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984). Raley's direct and circumstantial evidence regarding the intent of the Board, in the light most favorable to her, does not rise to the level of a specific intent to force her to quit. The Board did not fail to act. Raley's internal sex discrimination appeal was filed only two months before she left and an investigation was begun immediately with Ms. McGarhan leading it. Also, the County Commissioners met separately with Raley and Gerred. Raley may not have liked the degree of action taken and may have felt that Gerred wanted her to leave, but that is insufficient evidence to qualify as specific intent to force her to leave.

■ The second element, intolerable working conditions, is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. *Bristow*, 770 F.2d at 1254–55 (and cases cited therein). Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. *Id.* This Court finds that, taking Raley's allegations as true, a reasonable person in Plaintiff's shoes would not have felt compelled to resign and, therefore, summary judgment will be granted on the count involving constructive discharge. Raley's discrimination appeal was just over two months old when she submitted her letter of resignation and a possible transfer was in the works. Still, she was granted educational leave in October and November of 1981.

D. *Sexual Harassment*

■ Raley argues that Gerred's sexual harassment created a hostile work environment and, thus, violated her rights under Title VII. It is well settled that sexual harassment is a form of sex discrimination prohibited by Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). There are two theories under which sexual harassment is actionable. First, *quid pro quo* sexual harassment occurs where sexual favors are directly linked to some economic or employment benefit. *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404; *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir.1983). Raley does not allege this theory. Second, the hostile environment theory prohibits sexual harassment where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." 29 C.F.R. § 1604.11(a)(3); *Meritor*, 477 U.S. at 65, 106 S.Ct. at 2404–05; *Katz*, 709 F.2d at 254. Raley is proceeding under this theory.

■ There is a three step procedure in hostile environment sexual harassment cases which is similar to discrimination cases. *Katz v. Dole*, 709 F.2d at 256 (4th Cir.1983); B. Schlei, *Employment Discrimination Law* at 152–153 (2d ed. Supp. 1989). First, the Plaintiff must establish a prima facie case by proving the existence of four elements: (1) that the conduct in question was unwelcome, (2) that the harassment was based on sex, (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment, and (4) that some basis exists for imputing liability to the employer. *Swentek v. USAir*, 830 F.2d 552, 557 (4th Cir. 1987). Imputed liability occurs when an employer knows or should know of the harassment and takes no effective action to correct the situation. *Katz*, 709 F.2d at 256. Second, the employer may rebut the plaintiff's case "directly, by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial" (*Katz*, 709 F.2d at 256), or that some other element of the plaintiff's prima facie case is not met. Third, the employer, to rebut the prima facie showing of imputed liability, must do more than indicate the existence of an official policy against harassment, by showing either the taking of "prompt remedial action reasonably calculated to end the harassment" (*Katz*, 709 F.2d at 256), or that it had no

actual or constructive knowledge of the harassment.

Raley can meet her burden at this stage on three of the four elements of her prima facie case. The Board concedes the existence of the first element, and it does not dispute the presence of the fourth element, actual or constructive knowledge. The second element, harassment based on sex, is present because even though men were touched as well, none were kissed or touched under their clothes as were the women.

■ This Court finds that Raley fails to meet her burden of showing harassment sufficiently severe or pervasive as to create an abusive working environment, the necessary third element. Not all workplace conduct that may be described as "harassment" affects a "term, condition, or privilege" of employment within the meaning of Title VII. *Meritor*, 477 U.S. at 67, 106 S.Ct. at 2405. To be actionable, sexual harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. *Id.* This is a question of fact. *Paroline v. Unisys Corp.*, 879 F.2d 100, 105 (4th Cir.1989). Summary judgment is "inappropriate unless, accepting [Raley's] evidence as true and drawing all justifiable inferences in her favor, a fact finder could not reasonably conclude that [Gerred's] conduct was so severe and pervasive as to create an abusive working environment." *Id.* The *Paroline* court continued in its description of the "severe and pervasive" element:

> [t]o determine whether the harassment was sufficiently severe or pervasive, the fact finder must examine the evidence both from an objective perspective and from the point of view of the victim.
>
> \*    \*    \*    \*    \*    \*

To succeed on a hostile environment claim, the plaintiff must first demonstrate that the harassment interfered with her ability to perform her work or significantly affected her psychological well-being. (Citation omitted). If the plaintiff satisfies that burden, the fact finder must then decide whether the

harassment would interfere with the work performance or significantly affect the psychological well-being of a reasonable person in the plaintiff's position.
*Paroline*, 879 F.2d at 105.

This Court does not find that Raley's sexual harassment claim should survive summary judgment when viewed in light of the "totality of the circumstances." *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982). Although much of the treatment received by Raley from Gerred which she sets forth in her Opposition Memorandum is "harassment," it is insufficient to trigger a violation of Title VII. The touchings were not "severe and pervasive" but instead were isolated incidents. Raley only alleges two (2) touchings after May of 1981. Various other touchings, including the thigh incident, occurred in the first eight (8) months of her employment.

In *Paroline*, where the court found the issue of "severe and pervasive" to be a jury issue, the male supervisor repeatedly touched and kissed the plaintiff and once tried to enter her apartment for sexual reasons, all within two months time. The present case clearly does not rise to this level. Sexual innuendos at Raley's expense, although present, were also isolated incidents. In her deposition Raley could only remember two specific incidents, although some occurred to other women in the office. This Court also finds that the harassment did not interfere with her ability to perform her work or *significantly* affect her psychological well-being. The hostility was a natural result of the various unsatisfactory work evaluations of Raley by Gerred and did not result in adverse employment action.

### E.  *Retaliation During Plaintiff's Employment*

Raley's retaliation claims are brought under 42 U.S.C. § 2000e–3. She claims that the Board retaliated against her during her employment because she filed a sex discrimination appeal while she was employed. Raley cites in her Opposition Memorandum various actions taken against her. Plaintiff's Opposition at 42–43. The Board ar-

gues that no retaliation occurred because Raley can point to no adverse employment action taken against her.

■ The three step *McDonnell–Douglas* procedure used in discrimination/disparate treatment cases is applicable in retaliation cases as well. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). The prima facie case, however, consists of three different elements: (1) the employee engaged in protected activity, (2) the employer took adverse employment action against the employee, and (3) a causal connection existed between the protected activity and the adverse action. *Ross*, 759 F.2d at 365. There is no dispute that Raley's August 31, 1981, sex discrimination appeal is a protected activity within the meaning of 42 U.S.C. § 2000e–3.

■ This Court finds that Raley cannot establish the second element of her prima facie case—the existence of adverse employment action. Some courts, in retaliation cases, have interpreted "adverse employment action" somewhat broader than in discrimination/disparate treatment cases. See generally B. Schlei, *Employment Discrimination Law* at 227–228 (2d ed. Supp.1989). It is the view of this Court, however, that the guidelines of *Page v. Bolger*, 645 F.2d 227, quoted above under the discrimination count, must be applied in retaliation contexts as well. *Page* defines "adverse employment action" within the meaning of Title VII to be "ultimate employment decisions," not "interlocutory or mediate decisions having no effect upon employment conditions." *Page*, 645 F.2d at 233. None of the alleged retaliatory acts amounts to adverse employment action within the meaning of Title VII retaliation law. Some of the treatment received by Raley was a *continuation* of previous treatment and therefore could not be retaliation. The clerical work she may have been given did not affect her pay, promotions, etc. Raley was also given two educational leaves of absence at her request during the investigation of her appeal. Many of Raley's allegations can be attributed to an increase of predictable tension in an office after a discrimination

charge is filed. This is not adverse employment action. *Geisler v. Folsom*, 735 F.2d 991, 994 (6th Cir.1984). In light of the finding on the second element, the proof of the third element does not have to be reached.

### F. Retaliation In Her 1988 Employment Application

Raley argues in the second part of her retaliation claim that the Board took adverse employment action against her in 1988 by not considering her for the position of Director of OPZ because of her 1982 and 1988 claims filed with the MHRC and EEOC. The Board argues that Raley was not considered for employment and not hired because she lacked the necessary qualifications. According to the facts, there were two selection processes in 1988 for the position of Director of OPZ, the position that Gerred had held. In the first, around May of 1988, Raley's resume was not considered and she filed a retaliation claim with the MHRC and EEOC. In the second, in November of 1988, her resume was considered but she lacked the necessary qualifications for further consideration. Both selection processes in May and November of 1988 will be considered together.

The retaliation case three step procedure and the prima facie proof requirements apply here. The first element, protected activity by the plaintiff, is present through Raley's claim filed in 1982 with the MHRC and EEOC and through her claim filed in 1988 with the MHRC. As to the second element, Raley meets her prima facie burden of proof because failure to hire can be an adverse employment action. *Page*, 645 F.2d at 233 (hiring is an ultimate employment decision).

■ Raley, however, fails to meet her burden on the third element to make a prima facie showing that her failure to hire was causally connected with her protected activity. The burden on Raley is to "show that the adverse action would not have occurred 'but for' the protected conduct." *Ross*, 759 F.2d at 366. The Fourth Circuit has rejected the view that Title VII is vio-

lated if the retaliation was merely "in part" a reason for the adverse action. *Id.* In the present case, it is the view of this Court that the failure to hire Raley was because she did not have the education or experience qualifications necessary for the position, both times the position was advertised. Raley tried to persuade the Board that she had the equivalent requirements because she knew she did not meet the express qualifications. In any event, Raley's perceptions of her qualifications is irrelevant; it is the perception of the decision-maker which is relevant. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980).

CONCLUSION

There is no dispute as to any material fact and Defendant is entitled to judgment as a matter of law. For the reasons stated above, this Court will grant the Defendant Board's Motion for Summary Judgment as to all counts of the complaint.

A separate order will be entered.